IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIEL ROMANOWSKI,<br>   Plaintiff, | § § § | |
| v. | § § | Civil Action No. 3:22-CV-0428-E-BH |
| TRANS UNION, LLC, et al.,<br>   Defendants. | § § § | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings, evidence, and applicable law, *Defendant Wells Fargo Bank's Motion for Summary Judgment*, filed October 14, 2022 (doc. 62), should be **GRANTED in part**, and summary judgment should be *sua sponte* **GRANTED** in favor of the defendant on the remaining claim against it.

### I. BACKGROUND

Daniel Romanowski (Plaintiff) filed this *pro se* lawsuit against Wells Fargo Bank (Defendant) and other defendants for alleged violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. and the Fair Credit Billing Act (FCBA), 15 U.S.C. § 1601 *et seq*., and for defamation. (doc. 1 at 1.)[2]

On June 9, 2010, Plaintiff executed a promissory note and a deed of trust (collectively Mortgage Loan), which granted Defendant a security interest in certain real property located in Irving, Texas (Property). (doc. 65 at 6.) On June 4, 2018, Plaintiff sued Defendant to prevent a foreclosure sale of the Property. (*Id.*) After the court granted Defendant's motion for summary

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

judgment and dismissed the lawsuit on June 3, 2019, Plaintiff moved for reconsideration. (*Id.*) On July 30, 2019, Plaintiff's motion for reconsideration was denied, which he appealed. (*Id.*) In or around August 2019, Plaintiff paid the Loan in full. (*Id.*)

On September 18, 2019, Plaintiff and Defendant executed a Confidential Settlement Agreement and Release (Settlement Agreement) "to settle the Lawsuit and Appeal without the admission of liability by any party in order to avoid the expense and uncertainty of litigation." (*Id.* at 7.) The Settlement Agreement provided, in pertinent part:

3. <u>Dismissal of Appeal/ No Further Legal Action.</u> Plaintiff agrees to abandon the Appeal and any further pursuit of the Lawsuit by filing a motion to dismiss the Appeal within five (5) days of the Effective Date of the Agreement, and further agrees to take no further legal action against [Defendant] in any way related to the Lawsuit or the Property, or any potential claims he has or may have subject thereto.

4. <u>Release of [Defendant] by Plaintiff.</u> Plaintiff and his representatives, beneficiaries, agents, insurers, predecessors in interest, successors in interest, and assigns, and each of them, do hereby RELEASE, ACQUIT, AND FOREVER DISCHARGE [Defendant] and all of its past, present, and future assigns, divisions, departments, subsidiaries, parent companies, sister companies, affiliates, directors, officers, members, partners, principals, owners, insurers, shareholders, stockholders, investors, agents, representatives, employees, contractors, attorneys …, predecessors in interest, and successors in interest (collectively, the "Released Parties"), of and from any and all claims, suits, legal proceedings, causes of action, judgments, cross-claims, counterclaims, rights, demands, costs, expenses, fees, including attorney fees, obligations, liabilities, losses, and actual, compensatory, punitive, treble, or exemplary damages, of any kind whatsoever, under common law, statutory law, or otherwise, known or unknown, seen or unforeseen, real or imaginary, suspected or unsuspected, accrued or unaccrued, liquidated or non-liquidated, which Plaintiff has or might have based on, arising from, or in any way relating to the Note, the Deed of Trust, Property, Allegations, Lawsuit, Order, Appeal, any and all notices of any kind relating to the foreclosure of the Property, and any foreclosure of the Property (collectively, the "Released Matters"). The Matters Released by Plaintiff shall not operate as a release of any of the Parties' obligations under this Agreement.

5. <u>Covenants Not to Sue.</u> Plaintiff and his representatives, beneficiaries, agents, insurers, predecessors in interest, successors in interest, and assigns, and each of them, hereby covenant not to sue or in any way assist and/or encourage any other person or entity to sue the Released Parties with respect to any of the Released Matters. Nothing in this agreement shall preclude the Parties from suing each other

> for breach of this Agreement.
>
> …
>
> 7. <u>Non-Disparagement.</u> [Defendant] will not disparage Plaintiff or Plaintiff's performance or otherwise take any action which could reasonably be expected to adversely affect Plaintiff's personal or professional reputation. Similarly, Plaintiff will not disparage [Defendant] or any of its directors, officers, agents or Executives or otherwise take any action which could reasonably be expected to adversely affect the personal or professional reputation of [Defendants] or any of its directors, officers, agents or employees.

(*Id.* at 7-8).

On November 25, 2019, Plaintiff became aware that Defendant had reported credit information on his credit report. (*Id.* at 19.)

On October 1, 2021, Plaintiff filed this action against Defendant and Trans Union, LLC and Experian Information Solutions, Inc. (Credit Reporting Agencies) in the Western District of Pennsylvania. (doc. 1 at 2-7.) He alleges that Defendant is liable under the FCRA because it willfully and negligently failed to comply with the requirements imposed on furnishers of information in violation of 15 U.S.C. § 1681s-2(b), and it reported as delinquent to a third party a known erroneous and disputed account history in violation of 15 U.S.C. § 1666a. (*Id.* at 10-11.) He also alleges that Defendant is liable for defamation because its "trade line" contains "falsehoods concerning [his] credit history" and the publication of that information on his credit report constitutes "libel *per se*." (*Id.* at 13.)

After the lawsuit was transferred to the Northern District of Texas, Defendant moved for summary judgment on all of Plaintiff's claims against it on October 14, 2022. (doc. 63.) Plaintiff filed a sworn response on November 4, 2022, and Defendant replied on November 18, 2022. (docs. 70, 71.)

## II. EVIDENTIARY OBJECTIONS

Plaintiff appears to object to some of the exhibits attached to Defendant's motion for

summary judgment. (doc. 70 at 2.)

A party seeking summary judgment may rely on any form of evidence listed in Rule 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) (emphasis original). While the form of the summary judgment evidence need not be admissible, the content of the evidence must meet evidentiary requirements. *See, e.g., Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017); *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997).

A. **General Objections**

Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence it wishes to strike and stating the specific grounds for striking it. *Tucker v. SAS Inst., Inc.*, 462 F. Supp.2d 715, 722 (N.D. Tex. Nov. 7, 2006) (citing *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004)). "[A] trial court judge must be fully apprised of the grounds of an objection." *Id.* Objections lacking specificity do not satisfy the requirements of Rule 103, and a loosely formulated and imprecise objection does not preserve error. *Id.* (citing *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998)).

Plaintiff "disputes in part" Exhibits 1-B and 1-D, and disputes Exhibit 1-C in its entirety because it is "inadmissible" and provides no "evidentiary value." (doc. 70 at 2.) He has not offered any argument as to why the exhibits are inadmissible or cited any case law or Federal Rule of Evidence demonstrating that this evidence "cannot be presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). As noted, Rule 103(a)(1) requires an objection that details the *specific evidence* to be stricken and the *specific grounds* therefor. *See Tucker*, 462 F.

Supp.2d at 722 (explaining that "[t]he court is not required to review large quanta of evidence to ferret out inadmissible statements"); *Shepherd v. Dallas Cty.*, Tex., No. CIV.A. 305CV1442-D, 2008 WL 656889, at *6 (N.D. Tex. Mar. 6, 2008) (N.D. Tex. Mar. 6, 2008) (overruling objections because movant failed to point to inadmissible components).

Because Plaintiff's general objections to Defendant's evidence do not meet the specificity requirements of Rule 103(1)(a), they are **OVERRULED**. *See, e.g., Hannon v. Kiwi Servs.*, No. 3:10-CV-1382-K-BH, 2011 WL 7052795, at *2 (N.D. Tex. Dec. 30, 2011), *adopted as modified*, 2012 WL 234650 (N.D. Tex. Jan. 24, 2012) (denying a motion to strike for lack of specificity); *Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14-CV-3398-L(BH), 2016 WL 4479511, at *8 (N.D. Tex. Aug. 25, 2016) (same).

**B.** **Service of Discovery**

Plaintiff disputes that Exhibits 1-B and 1-C (Defendant's discovery requests) were "sent/delivered to [him]"; he claims that he received them only when Defendant's motion was filed. (doc. 70 at 2-3.)

Defendant provides the sworn declaration of its counsel (Counsel), as well as a copy of Defendant's First Set of Requests for Admission, Interrogatories, and Requests for Production (Discovery Requests) and the transmittal email and letter, both dated August 12, 2022, serving the Discovery Requests. (doc. 65 at 3-27.) It states that the Discovery Requests, email, and letter are true and correct copies of the documents Counsel sent "to the email address and mailing address listed by Plaintiff in the Complaint he filed in this suit" on August 12, 2022. (*Id.* at 4.)

Rule 5(b)(2)(C) provides that a "discovery paper" is properly served by "mailing it to the person's last known address—in which event service is complete upon mailing." Because Defendant's evidence shows that the Discovery Requests were mailed to Plaintiff's last-known

5

address on August 12, 2022, his actual receipt of those requests is not relevant. *See Daniels v. JP Morgan Chase Bank*, 574 F. App'x 337, 338 (5th Cir. 2014) (explaining that the receipt of a motion is irrelevant to the Rule 5(b)(2)(C) analysis because service by mail is "complete upon mailing"); *see, e.g., Alaniz v. H & H Farms, LLC*, No. 1:09-CV-113, 2016 WL 11546302, at *2 (S.D. Tex. Apr. 14, 2016) ("[E]vidence that a paper was sent to the recipient's last-known address suffices to prove service, and evidence that the paper was not received does not negate the conclusion that service was accomplished.").

**C.    Deemed Admissions**

Plaintiff also "disputes" the "[d]eemed" admissions. (doc. 70 at 5.)

Under Rule 36(a) of the Federal Rules of Civil Procedure, litigants may request admissions on a broad range of matters, including facts, the application of law to fact, opinions about facts or the application of law to fact, or the genuineness of a described document. Fed. R. Civ. P. 36(a)(1). "[I]f a request for admission remains unanswered, with no objection lodged, for more than thirty days after service of the request, it is deemed admitted."[3] *United States v. Akhtar*, 95 F. Supp.2d 668, 672 (S.D. Tex. 1999) (citing *id.*); *see also VeroBlue Farms USA Inc. v. Wulf*, --- F.R.D. ----, No. 3:19-CV-764-X, 2021 WL 5176839, at *4 (N.D. Tex. Nov. 8, 2021) ("Rule 36 is self-executing, and, in the absence of a timely-served written and signed answer or objection addressed to each matter, all Rule 36 requests for admission served on a party are deemed admitted by default."). Any matter admitted under Rule 36 "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

"Federal Rule of Civil Procedure 56(c) specifies that 'admissions on file' can be an

---

[3] Under Federal Rule of Civil Procedure 5(b)(2)(C), a party properly serves a "discovery paper" on its opponent by "mailing it to the person's last known address—in which event service is complete upon mailing."

appropriate basis for granting summary judgment." *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001); *see also Dingler v. Equifax Info. Servs., L.L.C.*, No. 3:12-CV-455-M BF, 2014 WL 1317511, at *3 (N.D. Tex. Feb. 28, 2014), *adopted by* 2014 WL 1325574 (N.D. Tex. Mar. 31, 2014) ("[A]dmissions are proper summary judgment evidence that can be used to show that there is an absence of a genuine issue of material fact."). "[I]f the requests for admissions concern an essential issue, the failure to respond to requests for admission can lead to a grant of summary judgment against the non-responding party." *Murrell v. Casterline*, 307 F. App'x 778, 780 (5th Cir. 2008). "Because deemed admissions, even those obtained by default, are conclusive as to the matters admitted, 'they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record.' " *McDonald v. Equifax Inc.*, No. 3:15-CV-3212-B, 2017 WL 879224, at *3 (N.D. Tex. Mar. 6, 2017) (quoting *In re Carney*, 258 F.3d at 420). "[T]he defaulting party's sole recourse is to move to withdraw or amend the deemed admissions under Rule 36(b)." *VeroBlue*, --- F.R.D. ----, 2021 WL 5176839, at *4 (citing *In re Carney*, 258 F.3d at 419); *see* Fed. R. Civ. P. 36(b).

Here, Counsel's declaration states that the Discovery Requests, email, and letter are true and correct copies of the documents she sent "to the email address and mailing address listed by Plaintiff in the Complaint he filed in this suit" on August 12, 2022. (doc. 65 at 4.) It also states that Plaintiff's responses were due on September 12, 2022, and that "[a]s of 5:00 pm Central Time on September 30, 2022, [Counsel] [had] not received any responses, objections, or other communication from Plaintiff regarding or relating to the Discovery Requests." (*Id.*) The Discovery Requests asked for admissions on the following matters:

- Admit [Y]ou signed the Settlement Agreement.

- Admit that the Settlement Agreement states Plaintiff "agrees to take no further legal action against [Defendant] in any way related to the Lawsuit or the

      Property, or any potential claims he has or may have subject thereto."

- Admit that the Settlement Agreement states Plaintiff "agrees to take no further legal action against [Defendant] in any way related to the Lawsuit or the Property, or any potential claims he has or may have subject thereto."

- Admit the credit information You alleged [Defendant] reported was accurate.

- Admit You became aware of the allegedly inaccurate credit reporting by [Defendant] as alleged in Your Complaint on or about November 25, 2019.

- Admit the Settlement Agreement states You agreed that "no promise or agreement which is not herein expressed has been made to [You] in executing this agreement."

- Admit that You have no evidence that any third party that reviewed Your credit information was misled by the way in which Your credit information as to the Property was reported by [Defendant].

- Admit that, in connection with the dispute(s) referenced in Your Complaint, [Defendant] conducted a reasonable investigation of the Disputed Account in compliance with the [FCRA].

- Admit that, in connection with the dispute(s) referenced in Your Complaint, [Defendant] provided all relevant information regarding Your dispute(s) in compliance with the [FCRA].

- Admit that You have not suffered any economic or out-of-pocket damages as a result of [Defendant]'s alleged action or inaction.

- Admit that You have not suffered any emotional damages as a result of [Defendant]'s conduct.

(*Id.* at 19-20.)

    Defendant has shown that it served Plaintiff with the Discovery Requests on August 12, 2021; that its requests for admissions concerned factual matters, matters involving the application of law to facts, or the genuineness of a described document; and that Plaintiff failed to serve a written answer or objection within 30 days of being served those requests. By failing to respond to Defendant's Discovery Requests, Plaintiff is deemed to have admitted to all the unanswered requests for admissions. *See Curtis v. State Farm Lloyds*, No. CIV.A. H-03-1025, 2004 WL

1621700, at *4 (S.D. Tex. Apr. 29, 2004) ("Unanswered requests for admissions are automatically deemed admitted with the passage of the deadline to respond."); *see also Hill v. Breazeale*, 197 F. App'x 331, 336 (5th Cir.2006) (applying Rule 36 against *pro se* litigant). Moreover, Plaintiff has not moved for leave to withdraw or amend his deemed admissions under Rule 36(b). *See In re Carney*, 258 F.3d at 419 (stressing that "a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)").

Accordingly, all of Plaintiff's unanswered requests for admissions are "conclusively established," "and constitute competent and undisputed summary judgment evidence." *Est. of Newton ex rel. Newton v. Grandstaff*, No. 3:10-CV-809-L, 2013 WL 230252, at *3 (N.D. Tex. Jan. 18, 2013); *see In re Carney*, 258 F.3d at 420. Any objection to the admissions is **OVERRULED**.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on an issue, it must "establish beyond peradventure *all* of the essential elements of the claim or defense." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)) (emphasis original). The moving party can also meet its summary judgment burden by "pointing out to the district court that there

9

is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (quotations omitted). There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. It must go beyond its pleadings and designate specific facts to show there is a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[4] Although the pleadings of a *pro se* litigant are to be provided "a liberal construction," *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012), Rule 56 imposes no obligation for a court "to sift through the record in search of evidence to support a party's opposition to summary judgment," *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of

---

[4] "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### IV. FAIR CREDIT REPORTING ACT

Defendant argues that it is entitled to summary judgment on Plaintiff's FCRA claims because his deemed admissions are fatal to essential elements of a claim arising out of 15 U.S.C. § 1681s-2(b). (doc. 64 at 9.)

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also Wilting v. Progressive County Mut. Ins. Co.*, 227 F.3d 474, 475 (5th Cir. 2000) (per curiam) (FCRA governs reporting of consumer credit information and permissible uses of credit reports). Among other things, the FCRA "require[s] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b); *see Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 465 (5th Cir. 2006).[5] Although "the FCRA primarily regulates consumer credit reporting agencies, the statute also creates various obligations on 'furnishers of information' to provide accurate

---

[5]The FCRA defines a "consumer reporting agency" as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(e).

information to consumer credit reporting agencies." *Smith v. Nat'l City Mortgage*, No. A-09-CV-881 LY, 2010 WL 3338537, at *15 (W.D. Tex. Aug. 23, 2010) (citation omitted); 15 U.S.C. § 1681s–2.[6] Generally, the FCRA provides a private right of action for willful or negligent noncompliance against consumer reporting agencies and furnishers of information. *See* 15 U.S.C. §§ 1681n, 1681o.

"Under § 1681s–2(a), furnishers of information may not knowingly provide inaccurate information to consumer reporting agencies." *Smith*, 2010 WL 3338537, at *14 (citing 15 U.S.C. § 1681s–2(a)). Once a furnisher is notified by a consumer reporting agency that the consumer has disputed the completeness or accuracy of information pursuant to § 1681i(a)(2), the furnisher must conduct its own investigation with respect to the disputed item, correct any inaccuracy, and notify the agency of the results of its investigation. 15 U.S.C. § 1681s–2(b). To recover against a furnisher for violations of § 1681s–2(b),[7] a plaintiff must show that: (1) the furnisher provided inaccurate credit information about him to a consumer reporting agency; (2) he disputed the accuracy or completeness of information with a consumer reporting agency; (3) the agency notified the furnisher of his dispute; and (4) the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation. *Schoch v. Wells Fargo Home*

---

[6]The FCRA does not define "furnisher of information." Courts in the Fifth Circuit "have defined the term broadly to mean 'an entity [that] transmits information concerning a particular debt owed by a consumer to a consumer reporting agency.'" *Alam v. Sky Recovery Services, Ltd.*, No. Civ.A. H-08-2377, 2009 WL 693170 at *4 (S.D. Tex. Mar. 13, 2009) (quoting *Thomasson v. Bank One*, 137 F. Supp.2d 721, 722 (E.D. La. 2001)).

[7]"The language in the FCRA plainly and unambiguously states that a consumer does not have any remedies available for a claimed violation of § 1681s–2(a)" since it provides that such a violation "'shall be enforced exclusively' by certain federal agencies, and federal and state officials." *Patterson v. Long Beach Mortgage Co.*, No. CIV.A.3:07-CV-1602-O-BH, 2009 WL 4884151, at *4 (N.D. Tex. Dec. 15, 2009) (citing 15 U.S.C. § 1681s–2(a), (d)). Because there is no such limitation relating to § 1681s–2(b), "many federal courts in the Fifth Circuit have held that [in contrast to § 1681s–2(a),] § 1681s–2(b) creates a private right of action." *Davis v. Sallie Mae, Inc.*, CIV.A. No. 3:09-CV-00821, 2009 WL 2525303, at *3 (N.D. Tex. Aug. 18, 2009) (collecting cases). While expressly declining to rule on this issue, the Fifth Circuit has noted that "[n]othing in [§ 1681s–2] precludes a private right of action for violation of the investigation and reporting requirements of Section 1681s–2(b)." *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002).

*Mortg.*, No. 4:16-CV-619-ALM-CAN, 2017 WL 2385626, at *4 (E.D. Tex. Apr. 11, 2017), *adopted by* 2017 WL 2312079 (E.D. Tex. May 26, 2017) (citation omitted); *see also* 15 U.S.C. §§ 1681s–2(b), 1681i(a)(2).

Defendant points to Plaintiff's deemed admissions that the credit information reported by Defendant was accurate, that it conducted a reasonable investigation of the disputed credit information in compliance with the FCRA, and that it provided all relevant information regarding his disputes in compliance with the FCRA. (doc. 65 at 19-20.) Given these admissions, Defendant has met its summary judgment burden to show that there is no genuine issue of material fact with respect to an essential element of Plaintiff's § 1681s–2(b) claim. *See In re Carney*, 258 F.3d at 419-20; *see also Dingler*, 2014 WL 1317511, at *3 ("The movant can satisfy its initial summary judgment burden by offering deemed admissions that rebut the plaintiff's claims.").

The burden now shifts to Plaintiff to identify evidence in the record creating a genuine issue of material fact regarding whether Defendant is entitled to summary judgment on his § 1681s–2(b) claim. In his sworn response, Plaintiff avers that Defendant reported "inaccurate information" to the credit reporting agencies (doc. 70 at 1), but "[a] plaintiff cannot present the court with evidence that contradicts his deemed admissions to create a genuine issue of material fact at the summary judgment stage." *Dingler*, 2014 WL 1317511, at *3; *see also Cottrell v. Career Inst. Inc.*, 1 F.3d 1237, at *1 (5th Cir. 1993) (unpublished) (affirming district court's decision to grant summary judgment based on deemed admissions where *pro se* plaintiff never moved for their withdrawal pursuant with the procedure established in Rule 36(b), and noting that "a district court is not free to amend or withdraw Rule 36 admissions *sua sponte*"); *Onosode v. Equifax Info. Servs.*, No. 4:20-CV-00951-SDJ-CAN, 2023 WL 2783263, at *13 (E.D. Tex. Mar. 29, 2023), *adopted sub nom.*, 2023 WL 3060790 (E.D. Tex. Apr. 22, 2023) (granting summary judgment for defendant

on plaintiff's FCRA claims because her deemed admissions concerned an essential element of those claims).

Because Plaintiff's deemed admissions have conclusively established that there is no genuine issue of material fact on at least one element of his § 1681s–2(b) claim, and his deemed admissions cannot be rebutted, Defendant is entitled to summary judgment on this claim.[8]

## V. DEFAMATION

Defendant argues that Plaintiff's defamation claim fails as a matter of law because his deemed admissions conclusively establish the allegedly defamatory statement is true. (doc. 64 at 10.)

To prevail on a defamation claim under Texas law,[9] a plaintiff must prove the defendant published a false statement that defamed the plaintiff. *See Smith v. Wal-Mart Stores, Inc.*, 980 F.3d 1060, 1062 (5th Cir. 2020) (citing *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017)); *see also Brown v. Petrolite Corp.*, 965 F.2d 38, 43 (5th Cir. 1992) ("A defamation plaintiff must prove that

---

[8] Defendant generally argues that it is entitled to summary judgment on all of Plaintiff's FCRA claims based on his deemed admissions. (doc. 64 at 8.) Plaintiff's complaint asserts an FCRA claim based on "15 U.S.C. § 1666a" (doc. 1 at 11), but that section relates to the regulation of credit reports under the FCBA, 15 U.S.C. § 1601 *et seq*. Section 1666a provides that a creditor may not "directly or indirectly threaten to report to any person adversely on the obligor's credit rating or credit standing because of the obligor's failure to pay the amount" after receiving notice of a billing error, and that this amount "may not be reported as delinquent to any third party until the creditor" meets certain requirements and gives the obligor at least ten days to make payment. *Id.* If the obligor still disputes the amount owed, the creditor may not report the amount as delinquent unless the creditor also reports the amount in dispute. *Id.* § 1666a(b). "To prevail on a § 1666a claim, plaintiffs must demonstrate: '(1) the existence of a billing error, (2) timely notification of the billing error, and (3) failure of the [creditor] to comply with the procedural requirements of § 1666.'" *Harvey v. Checkered Flag Auto.*, No. 3:22-CV-420-HEH, 2022 WL 4538448, at *3 (E.D. Va. Sept. 28, 2022) (quoting *Beaumont v. Citibank (South Dakota) N.A.*, 2002 WL 483431, at *3 (S.D.N.Y. Mar. 28, 2002)). While Plaintiff's deemed admissions establish that Defendant's credit information reporting was accurate and that its actions complied with the FCRA, these admissions do not negate an essential element of a § 1666a claim. *See id.* To the extent Defendant moves for summary judgment on Plaintiff's § 1666a claim based on his deemed admissions, it should be denied.

[9] The parties appear to agree that Texas law governs the state law claim. While Plaintiff's complaint does not cite to Texas law, Defendant's motion cites to Texas law and Plaintiff does not dispute its applicability. (*See* docs. 64; 70); *see also CIMC Vehicles Grp. Co. v. Direct Trailer, LP*, No. CIV.A. H-10-709, 2012 WL 4017985, at *9 (S.D. Tex. Aug. 24, 2012), *adopted by* 2012 WL 4018200 (S.D. Tex. Sept. 12, 2012) ("By uniformly relying on Texas law, the parties agree that it applies to their controversy. Absent any indication in the record that any other law should apply, the court applies Texas law.").

the allegedly defamatory language is false."). A defamatory statement "tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *Walker v. Beaumont Indep. School Dist.*, 938 F.3d 724, 743 (5th Cir. 2019) (quoting *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)). Defamatory statements are published "if they are communicated to a third party capable of understanding their defamatory connotation and in such a way that the third party did so understand." *Crouch v. J.C. Penney Corp.*, 564 F. Supp.2d 642, 646 (E.D. Tex. Mar. 19, 2008), *aff'd sub nom.*, 337 F. App'x 399 (5th Cir. 2009).

Defendant meets its initial summary judgment by pointing to Plaintiff's deemed admission that the credit information it reported was accurate. (*See* doc. 65 at 19.) Given this deemed admission, Plaintiff cannot prove an essential element of his defamation claim. *See Bedford*, 520 S.W.3d at 904. While he disputes making this admission, because he failed to respond to Defendant's request for admissions and has not moved to withdraw his deemed admissions, he is barred from offering any testimony or evidence to rebut his deemed admissions. *See In re Carney*, 258 F.3d at 419. As Plaintiff cannot prove an essential element of his defamation claim, it fails as a matter. *See, e.g., Robinson v. Radio One, Inc.*, No. 3:09-CV-1203-O, 2010 WL 11698068, at *3 (N.D. Tex. June 9, 2010) (granting defendant's summary judgment motion on plaintiff's defamation claim because his deemed admission that its alleged defamatory statement was true negated an essential element of the claim).

Because Plaintiff's deemed admissions have conclusively established that there is no genuine issue of material fact on an essential element of his defamation claim—i.e., the veracity of Defendant's information on his credit report—and because his deemed admissions cannot be

rebutted, Defendant is entitled to summary judgment on his defamation claim.[10]

## VI.  FAIR CREDIT BILLING ACT

Plaintiff's complaint alleges that Defendant is also "liable" under 15 U.S.C. § 1666a "for reporting as delinquent to a third party a known erroneous and disputed account history." (doc. 1 at 11.) Defendant's motion does not directly address this claim. (*See* doc. 64.)

A district court may grant a motion for summary judgment on grounds not raised by the moving party, provided that the non-moving party is first given notice and a reasonable time to respond. Fed. R. Civ. P. 56(f); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2001); *Ross v. Univ. of Tex.*, 139 F.3d 521, 527 (5th Cir. 1998). The fourteen-day period for objecting to a magistrate judge's recommendation to grant a motion for summary judgment is sufficient notice under Rule 56(f). *See Dupry v. Gehrig*, No. 08-CV-1036, 2009 WL 2579055, *4 (W.D. La. Aug. 20, 2009) (stating that the previous ten-day objection period satisfied the ten-day notice requirement under Rule 56); *St. Paul Mercury Ins. Co.*, 224 F.3d at 435 (stating that a party should be provided at least ten days notice before a court grants summary judgment *sua sponte*).

"The Fair Credit Billing Act protects consumers against inaccurate and unfair credit billing and credit card practices." *Rhodes v. Whole Foods Mkt., Inc.*, No. SA-07-CV-0641 FB NN, 2007 WL 3256236, at *2 (W.D. Tex. Nov. 5, 2007). Section 1666a of the FCBA regulates reports made by a creditor "on obligor's failure to pay amount regarded as billing error." 15 U.S.C. § 1666a(a). Numerous federal courts have found that the FCBA only applies to open end consumer credit plans,[11] like credit card accounts, and not closed-end credit transactions, like mortgage loans. *See,*

---

[10]Because Defendant is entitled to summary judgment on Plaintiff's FCRA and defamation claims, it is not necessary to consider its remaining summary judgment arguments as to those claims.

[11]An "open end consumer credit plan" is a "plan under which the creditor reasonably contemplates repeated

16

*e.g., Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012) ("The FCBA's protections do not extend to closed-end credit, such as the mortgage loan at issue in this case."); *Crenshaw v. Experian Info. Sols., Inc.*, No. 1:15 CV 109, 2015 WL 3771691, at *3 (N.D. Ohio June 17, 2015) ("[The FCBA] does not apply to closed-end credit transactions, like mortgages."); *Frank v. Wells Fargo Bank. Nat. Ass'n*, No. 11-CV-8035-PCT-NVW, 2011 WL 1480041, at *5 (D. Ariz. Apr. 19, 2011) ("Plaintiff's allegation that Defendants violated the FCBA by reporting derogatory credit ratings to national credit reporting agencies and failing to respond to Plaintiff's written complaint fails because the FCBA's prohibitions on reporting a defaulting debtor apply only in cases of open-end credit accounts, not mortgage transactions."); *see also McLean v. Big Dog Grp., LLC*, No. CV 15-40-JWD-EWD, 2016 WL 3211514, at *10 (M.D. La. Mar. 11, 2016) (dismissing FCBA claim because "the scope of the FCBA does not extend to a closed-end transaction for the purchase of a vehicle"); *Rhodes v. Whole Foods Market, Inc.*, No. SA-07-CV-0641 FB (NN), 2007 WL 3256236, at *2 (W.D. Tex. Nov. 5, 2007) (finding FCBA's billing error section only applied to open-end credit plans).

    Here, Plaintiff alleges that Defendant is liable under § 1666a of the FCBA because it continues to report the Mortgage Loan account on his credit report, despite written notice of "this error." (doc. 1 at 11.) As discussed, the FCBA " 'only applies to open-end consumer credit plans,' and its 'protections do not extend to closed-end credit, such as the mortgage loan at issue in this case'." *Hubbard v. Citimortgage, Inc.*, No. 11:2-CV-03906-RWS-JCF, 2014 WL 12529093, at *2 (N.D. Ga. Feb. 20, 2014) (quoting *Stroman*, 852 F. Supp.2d at 1374).

    Because there are no allegations that Defendant provided Plaintiff an open-end credit loan

---

transactions... and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(j).

or that his account with Defendant constitutes an open-end credit transaction, his FCBA claim fails as a matter of law, and summary judgment should be granted *sua sponte* in favor of Defendant on this claim.

## VII.  RECOMMENDATION

Defendant's motion for summary judgment should be **GRANTED in part** on Plaintiff's FCRA and defamation claims, summary judgment should be *sua sponte* **GRANTED** in favor of Defendant on his FCBA claim, and all claims against Defendant should be **DISMISSED with prejudice**.

**SO RECOMMENDED** on this 17th day of August, 2023.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE